IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RUTH ANN MUNGER, Individually, and in her Capacity as Co-Personal Representative of the Estate of Philip Louis Cloud,<br><br>                Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, a Delaware Corporation, as Plan Administrator of the Intel Retirement Contribution Plan, Intel 401(K) Savings Plan; Intel Minimum Pension Plan, Intel Retiree Medical Plan, and Sheltered Employee Retirement Medical Account; and TRACY LAMPRON CLOUD,<br><br>                Defendants. | No. 3:22-cv-00263-HZ<br><br>OPINION & ORDER |

Erin K. Olson
Law Office of Erin Olson, P.C.
1631 N.E. Broadway Street #816
Portland, OR 97232-1425

Megan Johnson
Johnson McCall LLP
200 SW Market Street
Suite 950
Portland, OR 97201

      Attorneys for Plaintiff

1 – OPINION & ORDER

Sarah J. Ryan
Anthony Copple
Donald P. Sullivan
Jackson Lewis P.C.
200 SW Market Street, Suite 540
Portland, Oregon 97201

    Attorneys for Intel Defendants

Tracy Lampron Cloud
#23662184
Coffee Creek Correctional Facility
24499 S.W. Grahams Ferry Road
Wilsonville, OR 97070

    Defendant, *Pro Se*

HERNÁNDEZ, District Judge:

This matter comes before the Court on Plaintiff's Motion for Summary Judgment, ECF 66; Defendant Tracy Lampron Cloud's Motion for Summary Judgment, ECF 70; and Defendant Cloud's Motion for Order, ECF 80. For the reasons that follow, the Court grants Plaintiff's Motion and denies Defendant Cloud's Motions.

## BACKGROUND

Philip Louis Cloud ("Philip Cloud") was an employee of Defendant Intel Corporation and a participant in five employee benefit plans (the Plans)[1] through his employment with Defendant Intel Corporation: (1) the Intel 401(k) Savings Plan; (2) the Intel Retirement Contribution Plan ("RC Plan"); (3) the Intel Minimum Pension Plan ("MP Plan"); (4) the Intel Retiree Medical Plan ("IRM Plan"); and (5) the Intel Sheltered Employee Retirement Medical Account ("SERMA"). Philip Cloud was fully vested or otherwise eligible to participate in the Plans at the

---

[1] It is undisputed that the Plans are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2 – OPINION & ORDER

time of his death. The Plans provide that Philip Cloud's wife, Defendant Tracy Cloud ("Cloud"), is his primary beneficiary and his estate is the secondary beneficiary.

On September 23, 2019, Cloud killed Philip Cloud. On January 8, 2020, a Washington County grand jury indicted Cloud on a charge of second degree murder.

On February 11, 2020, the Estate of Philip Cloud through Ruth Ann Munger filed in a probate case before Washington County Circuit Court (No. 19PB07623) a petition for declaratory judgment pursuant to Oregon's Slayer Statute, Or. Rev. Stat. 112.455 *et seq.*, in which it sought a declaration of the "respective property interests, rights, claims, assets, and liabilities of the Decedent, Philip Louis Cloud; his slayer, Tracy L. Cloud; and any other heirs, entities or persons." FAC, Ex. 4 at ¶ 8(4).[2]

On November 13, 2020, Ruth Ann Munger, acting on behalf of Philip Cloud's estate, submitted a claim to the Intel Retirement Plans Administrative Committee seeking Philip Cloud's Plan benefits on the grounds that Oregon and federal law prohibit "slayers from profiting from their crimes" and Cloud was "being held without bail in Washington County, Oregon, on charges of Murder in the Second Degree." FAC, Ex. 4 at 1. The Committee did not distribute the Plan benefits.

On November 9, 2021, a Washington County jury convicted Cloud of second degree murder. Cloud filed an appeal of her conviction to the Oregon Court of Appeals and her appeal remains pending.

On February 17, 2022, Ruth Ann Munger, individually and in her capacity as personal representative of the Estate of Philip Cloud, filed a Complaint in this Court pursuant to ERISA in

---

[2] There were three matters involving Philip Cloud's estate and Cloud pending in Washington County Circuit Court: a probate case (19PB07623), a trust matter (20PB01615), and a wrongful-death action (22CV07069).

3 – OPINION & ORDER

which she seeks payment of Philip Cloud's Plan benefits to the estate of Philip Cloud on the basis that Cloud is the "slayer" of Philip Cloud and, therefore, she is not entitled to any Plan benefits.

On November 15, 2022, Intel Defendants filed a Counterclaim and Crossclaim for Interpleader and Request for Declaratory Relief in which they note the competing claims to the Plan benefits, request this Court determine the rights of the parties to certain proceeds payable from the 401(k) Plan and the RC Plan, and seek a determination whether Oregon's slayer statute or federal common law preclude Cloud from being eligible to receive benefits under the terms of the MP Plan, IRM Plan, and/or SERMA.

In November and December 2022, Cloud filed two Motions to Dismiss or Put in Abeyance in which she requested this Court dismiss, or in the alternative, stay this matter pending the appeal of her conviction.

On December 8, 2022, Plaintiff filed a Motion for Summary Judgment in which Plaintiff requests the Court "exercise its discretion to estop Ms. Cloud from relitigation [*sic*] the question of whether she murdered Philip" Cloud. Pl. Mot. for Summ. Judgment at 8.

On February 6, 2023, the Court granted Cloud's Motions to Put in Abeyance; stayed this matter until the completion of either Cloud's criminal appeal or the state-court wrongful-death proceedings, whichever occurred first; and denied the other pending Motions with leave to renew after the Court lifted the stay.

On February 8, 2023, Plaintiff filed a Motion to Lift Stay and Reinstate Motions in which she advised the Court that on January 20, 2023, "the state court adjudicated Cloud a slayer and found her liable for the wrongful death of Philip Cloud." Pl.s' Mot. to Lift Stay, ECF 52, at 2, Ex. 1-3. Plaintiff submitted an Order in the probate matter granting Munger's partial motion for

summary judgment and a limited judgment in the probate matter ruling "Tracy Lampron Cloud is the 'slayer' of Philip Louis Cloud within the meaning of ORS 112.455(3)." Pl.s' Mot., Ex. 1-2. Plaintiff also submitted an Order issued in the wrongful-death action granting Plaintiff's motion for partial summary judgment on the issues of liability and causation and finding that Cloud "has been convicted of Murder in the Second Degree for killing [Philip Cloud]; that there is therefore no genuine issue as to any material fact concerning [Cloud's] liability for and causation of the death of [Philip Cloud]." Pl.s' Mot., Ex. 3 at 1-2.

The Court, therefore, granted Plaintiff's Motion, lifted the stay, and reinstated Plaintiff's Motions. On May 5, 2023, the Court issued an Opinion and Order in which it granted Plaintiff's Motion for Summary Judgment and estopped Cloud from relitigating in this matter whether she murdered Philip Cloud.

On June 15, 2023, Plaintiff filed a Motion for Summary Judgment in which she requests, among other things, that the Intel 401(k) Savings Plan and Intel Retirement Contribution Plan benefits be distributed to the Estate of Philip Cloud. On June 26, 2023, Cloud filed a Cross-Motion for Summary Judgment and Counterclaim. On July 19, 2023, Cloud filed a Motion for Order. The Court took the parties' Motions under advisement on August 9, 2023.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009)(internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007)(citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff asserts in her Motion for Summary Judgment that the only persons or entities with possible legal standing to claim the Intel Plan Benefits are the Estate of Philip Cloud and Cloud; federal common law slayer doctrine applies; under the federal slayer doctrine Cloud is treated as having predeceased Philip Cloud; under the terms of the 401(k) and RC Plans benefits must be distributed to the Estate of Philip Cloud; and under the provisions of the MP Plan, the IRM Plan, and the SERMA no person or entity is entitled to the benefits of those plans.

Accordingly, Plaintiff requests the Court dismiss Ruth Ann Munger in her individual capacity;[3] order distribution of the 401(k) and RC Plan benefits to the Estate of Philip Cloud; and order that no entity or person is entitled to benefits of the MP Plan, the IRM Plan, or the SERMA.

In her Response to Plaintiff's Motion for Summary Judgment and in her Cross-Motion for Summary Judgment Cloud asserts California law applies to the Intel Plans; the Intel Plan assets were community property under California law and, therefore, Plaintiff is entitled to half of them even if she is a "slayer"; California slayer law governs and Plaintiff is not a slayer under that law until she fully exhausts her criminal appeals; and she was wrongfully convicted of murdering Cloud, therefore, her conviction cannot be used as a predicate for her adjudication as a slayer. Cloud also brings a counterclaim asserting she is entitled to "her community property share of the plan assets," seeking disbursement of those assets to Cloud, and seeking a judgment against the Intel Defendants "for fraud and unjust enrichment in their drafting of the Intel Settlement Agreement." Cloud Mot., ECF 69, at 13.

**I.      Choice of Law**

Plaintiff asserts in her Motion for Summary Judgment that Oregon law applies to determine Cloud's slayer status because Cloud murdered Philip Cloud in Oregon and they lived in Oregon at the time of the events at issue. Cloud asserts California law applies to the slayer question. Because the Court concludes that under either Oregon or California law Plaintiff has established Cloud is a slayer, it need not decide whether Oregon or California law applies.

---

[3] Plaintiff also requests the Court dismiss Mark Ina Cloud, Dawn Wilfong Robinson, and Cassandra Marie Wilfong from this matter, but Plaintiff voluntarily dismissed these individuals from this action on May 18, 2022. *See* ECF 10.

A.     **Oregon law**

Oregon Revised Statute § 112.515(1) provides: "proceeds payable under any of the following instruments to or for the benefit of a slayer of a decedent . . . as beneficiary . . . of the decedent . . . must be paid to the secondary beneficiary or, if there is no secondary beneficiary, to the personal representative of the estate of the decedent: . . . (d) Proceeds under any pension, profit-sharing or other plan." Oregon Revised Statute § 112.455(3)(a) defines a slayer in relevant part as a person who "[w]ith felonious intent, takes or procures the taking of a person's life." The Oregon Court of Appeals, however, has held that ERISA preempts § 112.515 because that "statute is a state law 'related to' an 'employee benefit plan'" and "both 'governs . . . a central matter of plan administration' and 'interferes with nationally uniform plan administration.'" *Herinckx v. Sanelle*, 281 Or. App. 869, 875 (2016)(quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). Specifically, the court noted "application of ORS 112.515 would mean that plan administrators '[could not] make payments simply by identifying the beneficiary specified by the plan documents.'" *Herinckx,* 281 Or. App. at 875 (quoting *Egelhoff*, 532 U.S. at 148). "Instead, plan administrators would be forced to 'familiarize themselves with state statutes so that they [could] determine whether the named beneficiary's status ha[d] been revoked by operation of law.'" *Id.* (quoting *Egelhoff*, 532 U.S. at 148–49).

Because ERISA preempts Oregon state law, but is itself silent on the question of the distribution of benefits to a beneficiary who is responsible for killing the plan participant, the Court must turn to federal common law for a governing rule. *See, e.g., Life Ins. Co. of N. Am. v. Camm*, No. 4:02-cv-00106-DFH-WGH, 2007 WL 2316480, at *5 (S.D. Ind. Aug. 6, 2007)(citing *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 567 (7th Cir.2002); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989)); *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1133 (9th

Cir. 1996)("ERISA requires that courts apply a federal common-law rule."); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990)(ERISA does not address the proper designation of beneficiaries where a beneficiary feloniously kills the insured. Due to this lack of statutory direction, courts are instructed to look to "federal common law."). Federal common law derives from the principle that "no person should be permitted to profit from his own wrong." *Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir. 1959). Thus, the "Supreme Court has long held that the law may not allow a person to benefit financially from a murder he has committed: 'It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken.'" *Camm*, 2007 WL 2316480, at *5 (quoting *Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600 (1886)). Courts have uniformly concluded federal common law "'prohibits a life insurance beneficiary who murders an insured from recovering under the policy.'" *Standard Ins. Co. v. Guy*, No. 218CV00074-DCLCCRW, 2021 WL 2410667, at *1 (E.D. Tenn. May 20, 2021)(quoting *Giles v. Ca.*, 554 U.S. 353, 384 (2008)(Breyer, J., Stevens, J., and Kennedy, J., dissenting)). *See also Prudential Ins. Co. of Am. v. Athmer,* 178 F.3d 473, 475-76 (7th Cir.1999)("The principle that no person shall be permitted to benefit from the consequences of his or her wrongdoing has long been applied to disqualify murderers from inheriting from their victims, whether the route of inheritance is a will, an intestacy statute, or a life insurance policy."); *Box v. Goodyear Tire & Rubber Co.*, 51 F. Supp. 3d 1147, 1154 (N.D. Ala. 2014)("The federal common law principle regarding slayers is that no person should profit from her own wrong.")(citations omitted); *Hartford Life & Acc. Ins. Co. v. Rogers*, No. 3:13-CV-101, 2014 WL 5847548, at *2 (D.N.D. Nov. 12, 2014)("It is well established in federal law . . . that a person should not financially benefit from the felonious or intentional killing of another human being.")(citations omitted); *Admin. Comm. for the H.E.B.*

9 – OPINION & ORDER

*Inv. & Ret. Plan v. Harris*, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002)("It has long been a principle of federal common law that such killers should not be rewarded with insurance benefits for taking a life.")(citations omitted).

Applying the principles of federal common law, the record reflects Cloud was convicted of second degree murder, which is a felony under Oregon law. O.R.S. § 163.115. In addition, under Oregon law "criminal homicide constitutes murder in the second degree . . . [w]hen it is committed intentionally." The Court, therefore, concludes Cloud's conviction constitutes a "felonious and intentional" killing within the meaning of federal common law. *Camm*, 2007 WL 2316480, at *5 ("Under federal common law, a conviction for murder or reckless homicide is sufficient to apply the slayer's rule.")(citing *Metro. Life Ins. Co. v. White*, 972 F.2d 122, 124 (5th Cir.1992)). As such, Cloud may not be permitted to profit from her own wrong and Cloud is treated as having predeceased Philip Cloud for purposes of distribution of ERISA plan assets. *See, e.g., Box v. Goodyear Tire & Rubber Co.*, 51 F. Supp. 3d 1147, 1153-1156 (N.D. Ala. 2014)(treating murderer as having predeceased her victim in distributing ERISA-governed plan benefits); *Atwater v. Nortel Networks, Inc*. 388 F. Supp. 2d 610, 618 (M.D.N.C. 2005)(plan administrator breached its fiduciary duties under ERISA by distributing plan benefits to husband charged with murdering his wife instead of wife's estate).

  **B.** **California Law**

Plaintiff asserts California law "preserves the spouse's rights in her share of the Community Property," the Plan benefits are community property, and California also "recognizes . . . that a conviction is not res judicata until all rights to appeal have been exhausted." Cloud Resp., ECF 69, at 1. Plaintiff asserts California law is preempted by ERISA

and even if it is not, under California's slayer law Cloud is treated as having predeceased Philip Cloud and, therefore, she is not entitled to the plan benefits.

### 1. Preservation of Community Property

Cloud relies on §§ 100 and 103 of California Probate Code to support her assertion that California law preserves the spouse's right to her share of community property. Section 100 addresses distribution of community property as follows: "Upon the death of a person who is married or in a registered domestic partnership, one-half of the community property belongs to the surviving spouse and the other one-half belongs to the decedent." Cal. Prob. Code § 100(a). Section 103 addresses distribution of community property on the "simultaneous death" of both spouses. Neither of these sections, however, address the distribution of community property when one spouse murders the other. Distribution of community property in that circumstance is set out in §§ 250-253 of the California Probate Code. Specifically, California's slayer statute provides: "A person who feloniously and intentionally kills the decedent is not entitled to . . . [a]ny property of the decedent under Division 5 (commencing with Section 5000)." Cal. Prob. Code § 250(a)(4). Division 5 of the California Probate Code lists various properties including "compensation plan[s], pension plan[s], individual retirement plan[s], employee benefit plan[s] . . . [and] other written instrument[s] of a similar nature. Cal. Prob. Code § 5000(a). In addition,

> [a] named beneficiary of a . . . life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the . . . policy, or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.

Cal. Prob. Code § 252. Finally, "[i]n any case not described in Section 250 . . . or 252 in which one person feloniously and intentionally kills another, any acquisition of property, interest, or

11 – OPINION & ORDER

benefit by the killer as a result of the killing of the decedent shall be treated in accordance with the principles of this part." Cal. Prob. Code § 253. Cloud does not cite, and this Court cannot find, a case in which a California court did not apply or evaluate §§ 250-253 of the California Probate Code when a slayer was implicated in the distribution of assets. Cloud, therefore, has not established that California preserves the spouse's right to her share of community property under the circumstances here.

### 2. When California's Slayer Statute Applies

Cloud also asserts California's slayer statute does not apply here because it does not apply until all rights to appeal have been exhausted and her conviction remains on appeal.

California Probate Code § 254(a) provides: "A final judgment of conviction of felonious and intentional killing is conclusive for purposes of" California's slayer statute. California courts have concluded the "phrase 'final judgment of conviction' in Probate Code section 254 does not include a judgment that is on appeal." *Principal Life Ins. Co. v. Peterson*, 156 Cal. App. 4th 676, 685 (2007). California Probate Code § 254(b), however, provides another method by which the provisions of the slayer statute may operate. It states:

> In the absence of a final judgment of conviction of felonious and intentional killing, the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this part. The burden of proof is on the party seeking to establish that the killing was felonious and intentional for the purposes of [California's slayer statute.]

As noted, on January 20, 2023, "the state court adjudicated Cloud a slayer and found her liable for the wrongful death of Philip Cloud." Pl.s' Mot. to Lift Stay, ECF 52, at 2, Ex. 1-3. Specifically, the state court in the probate matter granted Munger's partial motion for summary judgment and a limited judgment in the probate matter ruling "Tracy Lampron Cloud is the

12 – OPINION & ORDER

'slayer' of Philip Louis Cloud within the meaning of ORS 112.455(3)." Pl.s' Mot., Ex. 1-2. Plaintiff also submitted an Order issued in the wrongful-death action granting Plaintiff's motion for partial summary judgment on the issues of liability and causation and finding that . . . there is . . . no genuine issue as to any material fact concerning [Cloud's] liability for and causation of the death of [Philip Cloud]." Pl.s' Mot., Ex. 3 at 1-2. As noted, Oregon Revised Statute § 112.455(3) defines slayer in relevant part as "a person who: [w]ith felonious intent, takes . . . a person's life." This is virtually the same definition of a slayer as that found in California Probate Code § 250. The Court, therefore, concludes the Oregon state court's conclusion by a preponderance of the evidence that Cloud slayed Philip Cloud satisfies § 254(b) of the California Probate Code. As such, California's slayer statute applies to Cloud. As noted, under California law, therefore, Cloud is treated as having predeceased Philip Cloud for purposes of distribution of ERISA plan assets.

### 3. ERISA Preemption of California Law

Although California courts have not addressed whether California's slayer law is preempted by ERISA, Plaintiff asserts the Supreme Court's holding in *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), suggests it could be preempted. In *Egelhoff* the court addressed whether a provision of a Washington statute that stated "the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce" was preempted by ERISA to the extent that it applied to ERISA plans. *Id*. at 143. The Court concluded it was preempted. In so holding, Plaintiff asserts that the Court "left no doubt that ERISA does preempt a state's determination of whether an ERISA-governed plan is a marital asset." Pl. Reply at 5. The Court, however, specifically declined to reach the question of ERISA preemption of state slayer statutes. It noted:

> [R]espondents argue that if ERISA pre-empts this statute, then it also must pre-empt the various state statutes providing that a murdering heir is not entitled to receive property as a result of the killing. *See, e.g.,* Cal.Prob.Code Ann. §§ 250–259 (West 1991 and Supp.2000); 755 Ill. Comp. Stat., ch. 755, § 5/2–6 (1999). In the ERISA context, these "slayer" statutes could revoke the beneficiary status of someone who murdered a plan participant. Those statutes are not before us, so we do not decide the issue. We note, however, that the principle underlying the statutes - which have been adopted by nearly every State - is well established in the law and has a long historical pedigree predating ERISA. *See, e.g., Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1889). And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.

*Id.* at 151. Rather than support Plaintiff's argument, this statement appears to indicate ERISA may not preempt state slayer statutes. Ultimately, however, this Court need not determine whether ERISA preempts California's slayer statute because the Court concludes that whether or not ERISA preempts California's slayer statute, the result is the same. *See Honeywell Sav. & Ownership Plan v. Jicha,* No. CIV.08-4265 (DRD), 2010 WL 276237, at *5 (D.N.J. Jan. 15, 2010)("Since *Egelhoff*, several district courts considering this issue have reasoned that based on the dicta in *Egelhoff*, it is likely that ERISA does not preempt state slayer statues, but that it is unnecessary to determine the preemption issue since federal common law provides the same result as [the California] slayer statute."). As noted, under federal common law murderers are treated as having predeceased the victim for purposes of distribution of ERISA-governed plan benefits. Similarly, under California's slayer statute "[a] person who feloniously and intentionally kills the decedent is not entitled to . . . [a]ny property of the decedent under Division 5," which includes "compensation plan[s], pension plan[s], individual retirement plan[s], employee benefit plan[s] . . . [and] other written instrument[s] of a similar nature." Cal. Prob. Code §§ 250(a)(4), 5000(a). In that situation the benefits "become[] payable as though the killer had predeceased the decedent." *Id.* § 252.

14 – OPINION & ORDER

In summary, whether Oregon, California, or federal common law apply, under the circumstances of this case and on the record before the Court, the Court concludes Cloud must be treated as having predeceased Philip Cloud for purposes of distribution of the ERISA plan assets.

## II.   Distribution of ERISA Plan Assets

Philip Cloud's beneficiary designation form for the 401(k) and RC Plans listed Cloud as Philip Cloud's designated beneficiary for those Plans. Olson Decl., ECF 67, Ex. 4 at 2. Under the terms of the 401(k) Plan and the RC Plan, Cloud was the beneficiary of those Plans unless she predeceased Philip Cloud, in which case the beneficiary was Philip Cloud's Estate. Olson Dec., Ex. 5 at 16-17, Ex. 6, pp. 15-16. Under the terms of the MP Plan, only Cloud was eligible for benefits if Philip Cloud died before the commencement of benefit. Olson Decl., Ex. 7 at 17. If Cloud predeceased Philip Could, no person or entity was entitled to MP Plan benefits. *Id*. at 18-19. Under the terms of the IRM Plan and SERMA, only Cloud was eligible for benefits as Philip Cloud's surviving spouse, if Cloud predeceased Philip Cloud, no person or entity was entitled to IRM Plan or SERMA benefits. Olson Decl., Ex. 8, at 10, 12-13, 17.

Because the Court treats Cloud as predeceasing Philip Cloud, the Court finds that under the terms of the various plans Philip Cloud's estate is entitled to benefits of the 401(k) and PR Plans and no person or entity, including his estate, is entitled to the benefits of the MP or IRM Plans or SERMA.

## III.   Cloud Counterclaim

In her Motion for Summary Judgment Cloud asserts for the first time a counterclaim in which she alleges that Plaintiff and Intel Defendants breached a global settlement agreement that the parties allegedly entered into in the state cases. Plaintiff and Intel Defendants assert Cloud's

counterclaim should be stricken or in the alternative, that her request to assert such a counterclaim should be denied as futile.

The parties in the state cases negotiated a global settlement of the various state actions at some point. Pl. Reply at 11 n.5. The settlement failed, however, because, after all other parties signed a separately required agreement with the Intel Defendants that would have disposed of this action, Cloud refused to sign the separately required agreement. *Id.* Cloud did not oppose Plaintiff's motion in state court to rescind the settlement agreement and the state court ordered it rescinded on September 30, 2022. *Id*.

Federal Rule of Civil Procedure 15(a)(2) provides leave to amend "shall be freely given when justice so requires."

> The decision of whether to grant leave to amend . . . remains within the discretion of the district court, which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

*Leadsinger, Inc. v. BMG Music Pub.,* 512 F.3d 522, 532 (9th Cir. 2008)(quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Cloud did not attempt to add a counterclaim based on the alleged breach of the settlement until June 2023, nearly nine months after the state court rescinded the settlement. In the interim, Cloud filed numerous other motions in this matter as well as responses to Plaintiff's December 2022 Motion for Summary Judgment. Cloud does not provide any explanation why she delayed asserting the counterclaim until June 2023. The Court finds Cloud unduly delayed in asserting her counterclaim. *See Salameh v. Tarsadia Hotel,* 726 F.3d 1124, 1133 (9th Cir. 2013)(district court did not abuse discretion in denying leave to amend when the plaintiffs had "ample opportunity to properly plead a case and have failed to do so.").

Plaintiff and Intel Defendants also contend that permitting Cloud to assert her counterclaim would be futile because this Court lacks jurisdiction to enforce the settlement. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136–137 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citation omitted). "Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, . . .requires its own basis for jurisdiction." *Id.* The Ninth Circuit noted in *Kokkonen* that none of its cases have "for purposes of asserting . . . federal jurisdiction, relied upon a relationship so tenuous as the breach of an agreement that produced the dismissal of an earlier . . . suit." *Id.* at 379. Although *Kokkonen* involved dismissal of a federal action as a result of the parties' settlement agreement, it suggests this Court lacks jurisdiction to enforce the settlement agreement that the state court rescinded. Specifically, in *Kokkonen* the Court recognized that even when a federal court dismisses an action pursuant to the parties' stipulation and settlement, a later action to enforce the settlement will ordinarily involve state law breach of contract claims that cannot be brought in federal court (absent diversity or some other independent basis of jurisdiction). *Id.* at 381. Although the parties in that circumstance may provide a jurisdictional basis for such claims if they include in the settlement agreement a provision that the federal court retains jurisdiction over the settlement, here the federal court did not have jurisdiction over the parties' state court claims in the first place and there is no indication that the parties included a provision that this Court would have

jurisdiction to enforce the settlement order.[4] The Court, therefore, concludes permitting Cloud to assert her counterclaim would be futile because Cloud has not established that this Court has jurisdiction to enforce the state-court settlement agreement. Accordingly, the Court strikes Cloud's counterclaim and denies Cloud leave to amend her Answer to assert that counterclaim.

## IV. Cloud's Wrongful Conviction Allegations

Cloud also asserts in her Response to Plaintiff's Motion for Summary Judgment and in her Cross-Motion for Summary Judgment that Philip Cloud's estate is not entitled to the ERISA plan assets because Cloud was wrongfully convicted of murdering Philip Cloud. On May 3, 2023, however, the Court granted Plaintiff's Motion for Summary Judgment and estopped Cloud from relitigating in this matter whether she murdered Philip Cloud. The Court adheres to that decision here. The Court, therefore, declines to address again Cloud's wrongful-conviction allegations.

## CONCLUSION

The Court GRANTS Plaintiff's Motion for Summary Judgment, ECF 66, and accordingly, dismisses Plaintiff Ruth Munger in her individual capacity, orders distribution of the 401(k) and RC Plan benefits to the Estate of Philip Cloud, and orders that no entity or person is entitled to benefits of the MP Plan, the IRM Plan, or the SERMA. The Court DENIES Defendant Tracy Lampron Cloud's Motion for Summary Judgment, ECF 70, and DENIES

---

[4] It is questionable whether this Court could have such jurisdiction. The Ninth Circuit has made clear that certain areas of the law are reserved to state courts, including probate. Specifically, the "probate exception" to federal jurisdiction applies when "federal courts would be called on to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court." *Silk v. Bond*, 65 F.4th 445, 450 (9th Cir. 2023).

Defendant Cloud's Motion for Order, ECF 80. The Court DENIES pending motions as moot and DIRECTS Plaintiff to submit a form of judgment no later than October 19, 2023.

    IT IS SO ORDERED.

DATED: __October 5, 2023__ .

                                    */s/ Marco Hernández*
                                  MARCO A. HERNÁNDEZ
                                United States District Judge