IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RUTH ANN MUNGER, Individually, and in her Capacity as Co-Personal Representative of the Estate of Philip Louis Cloud,<br><br>              Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, a Delaware Corporation, as Plan Administrator of the Intel Retirement Contribution Plan, Intel 401(K) Savings Plan; Intel Minimum Pension Plan, Intel Retiree Medical Plan, and Sheltered Employee Retirement Medical Account; and TRACY LAMPRON CLOUD,<br><br>              Defendants. | No. 3:22-cv-00263-HZ<br><br>OPINION & ORDER |

Erin K. Olson
Law Office of Erin Olson, P.C.
1631 N.E. Broadway Street #816
Portland, OR 97232-1425

Megan Johnson
Johnson McCall LLP
200 SW Market Street
Suite 950
Portland, OR 97201

      Attorneys for Plaintiff

1 – OPINION & ORDER

Sarah J. Ryan
Anthony Copple
Donald P. Sullivan
Jackson Lewis P.C.
200 SW Market Street, Suite 540
Portland, Oregon 97201

    Attorneys for Intel Defendants

Tracy Lampron Cloud
#23662184
Coffee Creek Correctional Facility
24499 S.W. Grahams Ferry Road
Wilsonville, OR 97070

    Defendant, *Pro Se*

HERNÁNDEZ, District Judge:

This matter comes before the Court on the Motion of Counter and Cross Claimants in Interpleader Intel Corporation, the Intel Retirement Plans Administrative Committee, and the Intel Benefits Administration Committee ("Intel") for Attorneys' Fees, ECF 99. For the reasons that follow, the Court grants Intel's Motion and awards Intel attorney fees in the amount of $20,297.79.

## BACKGROUND

Philip Louis Cloud ("Philip Cloud") was an employee of Intel Corporation and a participant in five employee benefit plans (the Plans) through his employment with Intel Corporation: (1) the Intel 401(k) Savings Plan; (2) the Intel Retirement Contribution Plan ("RC Plan"); (3) the Intel Minimum Pension Plan ("MP Plan"); (4) the Intel Retiree Medical Plan ("IRM Plan"); and (5) the Intel Sheltered Employee Retirement Medical Account ("SERMA"). The Plans provided that Philip Cloud's wife, Defendant Tracy Cloud ("Cloud"), was his primary beneficiary and his estate was the secondary beneficiary.

2 – OPINION & ORDER

On September 23, 2019, Cloud killed Philip Cloud.

At some point before February 11, 2020, the Estate of Philip Cloud through Ruth Ann Munger filed in Washington County Circuit Court a probate case, a trust matter, and a wrongful-death action related to Cloud's killing of Philip Cloud seeking resolution of the "respective property interests, rights, claims, assets, and liabilities" of Philip Cloud and Cloud.

On November 13, 2020, Ruth Ann Munger, acting on behalf of Philip Cloud's estate, submitted a claim to the Intel Retirement Plans Administrative Committee seeking Philip Cloud's Plan benefits on the basis that Oregon and federal law prohibit slayers from profiting from their crimes. The Committee did not distribute the Plan benefits.

On November 9, 2021, a Washington County jury convicted Cloud of second degree murder.

On February 17, 2022, Ruth Ann Munger, individually and in her capacity as personal representative of the Estate of Philip Cloud, filed a Complaint in this Court pursuant to ERISA, 29 U.S.C. § 1001 *et seq.*, in which she sought payment of Philip Cloud's Plan benefits to the Estate of Philip Cloud on the basis that Cloud is the "slayer" of Philip Cloud and, therefore, she is not entitled to any Plan benefits.

On November 15, 2022, Intel filed a Counterclaim and Crossclaim for Interpleader and Request for Declaratory Relief in which it noted the competing claims to the Plan benefits and requested this Court determine the rights of the parties to certain proceeds payable from the Plans.

On October 13, 2023, this Court granted summary judgment in favor of Plaintiff, ordered distribution of the 401(k) and RC Plan benefits to the Estate of Philip Cloud, and ordered that no

entity or person was entitled to benefits of the MP Plan, the IRM Plan, or the SERMA. The Court entered a Judgment on October 23, 2023.

On November 6, 2023, Intel filed a Motion for Attorneys' Fees in which it seeks fees in the amount of $20,297.79. Plaintiff "takes no position" on Intel's Motion.

## STANDARDS

"A disinterested stakeholder's entitlement to attorney's fees in an interpleader action" and "the amount of fees to be awarded in an interpleader action" are committed to the sound discretion of the district court." *MacPherson-Pomeroy v. N. Am. Co. for Life & Health Ins.*, No. 120CV00092ADABAM, 2023 WL 5722632, at *2 (E.D. Cal. Sept. 5, 2023)(quoting *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir.1962)). "Interpleader is a valuable procedural device for ERISA plans who are confronted with conflicting multiple claims upon the proceeds of an individual's benefit plan. . . . [T]he interpleader plaintiff effectively disclaims any position as to which of the claimants is entitled to the fund." *Tr. of Dir. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir.), opinion amended on denial of reh'g, 255 F.3d 661 (9th Cir. 2000). "Because the interpleader plaintiff is supposed to be disinterested in the ultimate disposition of the fund, attorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, not in litigating the merits of the adverse claimants' positions." *Id.* (citing *Schirmer Stevedoring,* 306 F.2d at 194). Compensable expenses include things such as "preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action." *Id.* (citation omitted).

"Because the scope of compensable expenses is limited, attorneys' fee awards to the "disinterested" interpleader plaintiff are typically modest." *Id.* at 427 (citing *Schirmer*

*Stevedoring*, 306 F.2d at 194–95; *Prudential Ins. Co. v. Boyd*, 781 F.2d 1494 (11th Cir.1986); *In re Technical Equities Corp.*, 163 B.R. 350, 360–61 (Bkrtcy.N.D.Cal.1993)(collecting cases)). In addition, "because the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id.* The Court "undertakes a lodestar analysis to guide its determination regarding the appropriate amount of attorneys' fees and costs." *Principal Life Ins. Co. v. Calloway Est. of Perkins*, No. 119CV00147DADSKO, 2021 WL 720648, at *3 (E.D. Cal. Feb. 24, 2021).

## DISCUSSION

**I.    Lodestar Calculation**

Under the lodestar analysis the court calculates the "lodestar" by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). After calculating the lodestar the court then "assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of . . . factors that are not already subsumed in the initial lodestar calculation."[1] *Id.* at 363-64 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and exceptional cases." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). While it is not necessary to

---

[1] Factors subsumed within the lodestar include the novelty and complexity of the issues, special skill and experience of counsel, quality of the representation, results obtained, and the superior performance of counsel. *D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1383 (9th Cir. 1990).

detail every numerical calculation, and across-the-board percentage adjustments are permissible, the court must provide "enough of an explanation to allow for meaningful review of the fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

## II.     Analysis

As noted, Plaintiff did not object to Intel's requested attorney fees. Nevertheless, the Court has "an independent duty to review the fee petition for reasonableness." *Sarkisian v. Newmar Indus., Inc.*, No. 3:21-CV-01123-IM, 2023 WL 7911763, at *4 (D. Or. Nov. 16, 2023).

### A.     Reasonable Rate

In determining the reasonable hourly rate, the court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1033 (D. Or. 1996). In determining a reasonable hourly rate, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See Roberts v. Interstate Distrib. Co.*, 242 F.Supp.2d 850, 857 (D. Or. 2002)(in determining the reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark" and attorneys should "provide ample justification" for deviating from the Survey rates). The most recent OSB Economic Survey was published in

2022.[2] Courts may also consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).

Although Intel states that Sarah Ryan billed Intel for her services at the rate of $609 per hour and Donald Sullivan billed Intel for his services at the rate of $730 per hour, Intel also notes those attorneys applied an 18% discount to their fees in the Motion for Attorneys Fees. Accordingly, Ryan seeks fees at an effective rate of $499.38 per hour and Sullivan seeks fees at an effective rate of $598.60 per hour.

**1.    Attorney Ryan**

Ryan has been a member of the Oregon State Bar for 40 years, has more than 30 years of litigation experience, and has tried several bench and jury trials to verdict in various courts in Oregon and Washington. Ryan's fee request is supported by Sullivan's Declaration. According to the 2022 OSB Economic Survey, the median hourly rate for Portland attorneys with more than 30 years of experience is $425 and 95th percentile hourly rate is $798. The Court therefore finds Ryan's requested effective rate of $499.38 per hour is reasonable.

**2.    Attorney Sullivan**

Sullivan has been a member of the California State Bar for 26 years, has focused his practice for more than 20 years in the area of ERISA and employee benefits, and has tried multiple ERISA actions to verdict in various district courts. Sullivan's fee request is supported by his Declaration. According to the 2022 OSB Economic Survey, the median hourly rate for Portland attorneys with between 21 and 30 years of experience is $450 and 95th

---

[2] The most recent OSB Economic Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf

7 – OPINION & ORDER

percentile hourly rate is $697. The Court therefore finds Sullivan's requested effective rate of $598.60 per hour is reasonable.

### B.      Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").

Intel seeks compensation for eight hours of work performed by Ryan and 27.5 hours of work performed by Sullivan. The Court notes that unlike the typical interpleader action, this matter was not commenced by Intel, but rather by the Estate of the Philip Cloud. Intel explains that after it was served with the First Amended Complaint, "the parties to this dispute indicated to the Intel Parties that the matter could be resolved through a stipulated agreement regarding the allocation of the balances in Philip L. Cloud's ERISA-governed plan accounts." Sullivan Decl., ¶ 7. Intel, therefore, "held off on filing an Interpleader so that the interested parties could come to a negotiated resolution regarding apportionment" because a settlement "would obviate the need for Intel to prepare, file and serve a Complaint in Interpleader." *Id.* Intel counsel researched and prepared a "complex, multi-party agreement" related to the stipulated agreement to ensure that the "proposed allocation of retirement plan benefits [would not] violate ERISA's anti-alienation rules or cause the benefit plans to lose their qualified status." Sullivan Decl. ¶ 7. Sullivan spent 15.4 hours on these tasks and Ryan spent eight hours. *Id.* ¶¶ 7-8. Cloud

8 – OPINION & ORDER

refused to sign the negotiated settlement agreement and Sullivan then spent 12.1 hours preparing the Compliant in Interpleader and other tasks related to interpleader. *Id.*

The Court finds that the tasks engaged in by Ryan and Sullivan are the kinds of tasks for which attorney fees are available in interpleader actions because they were "incurred in filing the action and pursuing the plan's release from liability" rather than in "litigating the merits of the adverse claimants' positions." *Tise*, 234 F.3d at 426 (citing *Schirmer Stevedoring*, 306 F.2d at 194). In addition, the Court concludes that the number of hours spent researching and drafting the proposed settlement agreement were reasonable in light of the complex nature of ERISA and the presence of five different funds at issue in this matter. Further, the time spent preparing the Complaint and other minimal interpleader filings in this action was reasonable.

Finally, no party has suggested that the Court should adjust the lodestar amount, and the Court declines to do so. Accordingly, the Court awards Intel counsel attorney fees in the requested amount of $20,297.79.

## CONCLUSION

Intel's Motion for Attorneys' Fees, ECF 99, is GRANTED. Intel is awarded attorney fees in the amount of $20,297.79.

IT IS SO ORDERED.

DATED: __December 1, 2023__.

                                                                          MARCO A. HERNÁNDEZ
                                                                          United States District Judge